[Cite as *State v. Mercer*, 2026-Ohio-2995.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>BENJAMIN MERCER,<br><br>    Defendant - Appellant | Case No. CT2025-0110<br><br>Opinion And Judgment Entry<br><br>Appeal from the Muskingum County Court of Common Pleas, Case No. CR2025-0293<br><br>Judgment:   Affirmed<br><br>Date of Judgment Entry: August 3, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; David M. Gormley, Judges

**APPEARANCES:** RONALD L. WELCH, Prosecuting Attorney, JOSEPH PALMER, Assistant Prosecuting Attorney, for Plaintiff-Appellee; CHRIS BRIGDON, for Defendant-Appellant.

*Baldwin, J.*

{¶1}   Appellant Benjamin Mercer appeals the jury verdict finding him guilty on one count of attempted rape and one count of gross sexual imposition, the trial court's evidentiary decisions, and the trial court's denial of his motion for new trial. Appellee is the State of Ohio. For the reasons that follow we affirm the jury's verdict and the decisions of the trial court.

STATEMENT OF FACTS AND THE CASE

{¶2}   The appellant was indicted on April 23, 2025, on one count of attempted rape of victim B.V., a person under the age of 13, in violation of R.C. 2923.02 and 2907.02(A)(1)(b) and (B), a felony of the first degree; and, one count of gross sexual imposition of victim B.V., a person under the age of 13, in violation of R.C. 2907.05(A)(4) and (C)(2), a felony of the

third degree. The appellant was arrested, and bond was set at $500,000.00, cash, real estate, or surety. The appellant was appointed counsel and pleaded not guilty at his April 30, 2025, arraignment, at which time his bond was continued.

{¶3} A jury trial commenced on June 24, 2025, at which the following testimony was presented. T.V., who is B.V.'s father, testified that on October 12, 2024, B.V. was staying overnight at his home. She was on the phone with her boyfriend and/or her boyfriend's mother, and was crying. Her boyfriend and/or his mother encouraged B.V. to tell T.V. that she had been sexually assaulted multiple times by her uncle – the appellant. T.V. testified that B.V. was crying and was very upset. T.V. had B.V. write down what she could remember about the incidents, and together they called B.V.'s mother, A.B.

{¶4} A.B. testified that her sister C.M. is married to the appellant. A.B. testified that on October 12, 2024, she received a telephone call from T.V. and B.V., at which time she learned that B.V. had been sexually assaulted by the appellant. A.B. testified that her family was close and would often have family gatherings. On some occasions, B.V. would travel with her grandmother to visit C.M. and her family, including the appellant. A.B. testified that B.V. returned early from one such out of state family visit and was described as "anti-social" during the visit, which was very unusual behavior for B.V. Other times the family gathered to spend time together at one another's homes. It was during these family visits that the sexual assaults occurred. A.B. met T.V. and B.V. at the sheriff's office the next day to file a report. A.B. testified further that on October 22, 2024, B.V. went to Brave Beginnings for a forensic interview and a medical examination.

{¶5} B.V. testified that on Labor Day in 2023, she visited her grandparents' house. She was 12 at the time. She testified that her family was present, including the appellant. B.V.

testified that she found herself alone with the appellant while others were sleeping, and that the appellant told her to lie on the couch with him. She testified that she was afraid of what the appellant would do if she said no. At that time, while B.V. was alone with the appellant, the appellant put his hand inside B.V.'s underwear. B.V. testified that she was wearing a feminine pad at the time, and the appellant removed his hand and began to rub her vaginal area for several minutes. B.V. testified that she was too scared to say anything. Her grandfather entered the room and the appellant stopped, pretending to be asleep.

{¶6} B.V. then recounted the first time she was sexually assaulted by the appellant, in June of 2023, while visiting the appellant and his family in Georgia. She was with the appellant and other family members watching a movie. B.V. testified that the other family members fell asleep, and that she also started to doze off. She was awakened by the appellant's hand on her stomach, moving up her shirt and grabbing her breasts. B.V. testified that the appellant then put his hand in her pants and inside her panties, rubbed her between her legs, and "his fingers went inside of me." B.V. testified that it hurt, and that it lasted five to seven minutes. B.V. testified that the appellant used his other hand to cover her mouth, and kissed her forehead.

{¶7} B.V. testified that after the assaults she wrote a letter detailing her feelings of betrayal. B.V. told her parents that the appellant sexually assaulted her, and also told some close friends. She recounted the assaults again when speaking with the staff at Brave Beginnings. B.V. testified that following the sexual assault the appellant exchanged messages with her, expressing his excitement to see her again at a hotel and telling her that he loved her, with heart emojis. Copies of said messages were introduced into evidence.

**{¶8}** Amanda McClelland, a nurse practitioner who is a sexual assault nurse examiner (SANE) at Brave Beginnings, testified regarding her interview and examination of B.V. Ms. McClelland testified that during her interview and examination of B.V., B.V. disclosed two incidents of sexual assault by the appellant. The first incident occurred during an out of state visit with family; B.V. disclosed that the appellant had touched her breast with his hand under her clothing, then touched her vulva, and finally penetrated her vagina with his finger. The second incident disclosed to Ms. McClelland by B.V. involved the appellant putting his hand down B.V.'s pants but being stopped from penetration by B.V.'s feminine pad.

**{¶9}** Detective Brad Shawger, lead investigator in the matter, was the next witness to testify. Detective Shawger testified he reviewed the appellant's communications, including jail phone calls, video visits, and text messages sent through the jail tablet system, while the appellant was incarcerated at the Muskingum County Jail. Detective Shawger explained that inmates can send and receive text messages using jail issued tablets, and that those communications are accessible to law enforcement. Detective Shawger testified regarding two written messages sent by the appellant to his wife while the appellant was incarcerated; said messages contained expressions of apology, references to breaking his wife's trust and heart, and statements reflecting a desire to maintain a relationship with her. The first message stated:

> I miss you too. And I'm really, really sorry. I can't take back what I've done. I feel awful. And hearing you cry and say the things you said took me straight back to when you left from Kansas. I'm sorry I let you down and broke your heart. I miss you bunches. I'm not expecting your forgiveness but I can only hope that you know how sorry I am….

The second message stated:

> I truly am sorry it even came to all of this. I'm sorry for embarrassing you. I'm sorry for hurting you. This hurts me too. Obviously I can't imagine what you must be feeling. But I believe I have a good idea of it. I have to live with the fact that I just broke your heart and I know I broke your trust. I know this is only the start of your wave of emotions. I know that you hate me. I'm sure. I can't even blame you for wanting to be done because I have to look at it from your perspective. Just because believe me when I say I am -- I say I'm truly sorry. I'm really hanging on to hope that we can still have some sort of relationship and be in each other's lives - - life. I never once wanted to be on bad terms with you. I understand I screwed up and I can't take it back. I'm not saying all this because it's what you want to hear. I'm saying because I still want you in my life. I'm saying it because I actually am sorry.
>
> I meant what I said when I told you I appreciate - - I am appreciative of you for all you do for the boys and I'm proud of you for being so tough throughout all of this. I'm thankful of [sic] the mother you are and I have become - - and have become over the years. I do love you. And I don't want to even see life without you because it's all I've known the last fourteen years. I'm super worried about you. And I know that by me not physically being there doesn't make it any easier. And it sucks when I hear you struggle and the phone call cuts out at eleven and I can't even call back to check on you. It's awful. I just wanted you to know I'm sorry for everything.

Said messages were admitted without objection.

**{¶10}** Additionally, Detective Shawger testified that on March 18, 2025, he met with the appellant's wife, C.M., approximately five months after the initial allegations were made. During cross-examination, Detective Shawger acknowledged that the meeting with C.M. occurred on the same day that at least one of the jail messages had been sent. He testified further that, as part of his investigation, he had listened to the jail phone calls and reviewed communications between appellant and his wife. During cross-examination, defense counsel attempted to question Detective Shawger regarding statements he made to C.M. during their March 18, 2025, meeting, and regarding communications between the appellant and his wife that had been read into the record, seeking to introduce evidence that the conversations were regarding the appellant's infidelity and not the sexual assault allegations. The appellee objected, arguing that questions involving the issue of a possible extramarital affair that the appellant had during the marriage elicited hearsay. The court recessed to address the issue outside the presence of the jury.

**{¶11}** The appellee argued that discussion of an extramarital affair was not relevant to the charges at issue. The trial court sustained the appellee's objection at that time, stating:

> BY THE COURT: We are outside the presence of the jury at the moment as well. We had discussed, I think, before - - before we went on recess an objection that the State made about a question to Detective Shawger regarding the statement that Detective Shawger had made to the defendant's wife. I am going to sustain that objection that it is hearsay.
>
> We did meet in chambers to discuss just going forward at a relevant time. *I'll make a ruling if that becomes relevant*. But just for counsel's information, Mr. Tabler, *at this time* I will find it's not relevant, what we had discussed.

\*   \*   \*

MR. EDWARDS: Your Honor, I'm sorry. Can I get one clarification? You are ruling that the line of questioning regarding an affair is not relevant; is that correct?

THE COURT: There's not really an objection so I'm not making a ruling. I'm just - - my  - - I don't find it's relevant *at this time.*

(Italics added.) Thus, the trial court did not definitively exclude evidence regarding the alleged extramarital affair; rather, it stated that it did not see that said evidence was relevant at that time, implying that it might be relevant and/or admissible as the trial progressed. The appellant did not object, nor did the appellant proffer evidence of the alleged extramarital affair at a later time during the trial.

{¶12} During closing argument, the appellee referenced the jail messages discussed during Detective Shawger's testimony and argued that said messages supported an inference of guilt. The prosecutor stated that the messages "fit what he did," and characterized them as a "statement against interest," explaining that "in common parlance, it's a confession." The appellee asked the jury to draw from that inference in its deliberations. On June 25, 2025, the jury returned a verdict of guilty on both counts.

{¶13} On June 30, 2025, the appellant filed a Request for New Trial pursuant to Crim.R. 32(A)(2) in which he argued that the messages submitted to the jury were not the full context of the messages between the appellant and his wife, that the majority of the messages between the appellant and his wife reference infidelity, and that given the full context of the messages "... there was no reasonable inference that these messages were a confession and should not have been presented as such...." The appellant requested an oral hearing on his

motion. He did not attach an affidavit to his Request for New Trial. He later attached an affidavit to his reply to the appellee's brief in opposition to his Request for New Trial, which addressed only a statement made by the prosecutor after the jury had rendered its verdict.

{¶14} On September 14, 2025, the trial court issued a Decision Entry denying the appellant's Request for New Trial, without a hearing. The trial court's entry contained an analysis of the issues, noting that as part of its consideration of the appellant's motion it listened to all the submitted jail calls, read through the transcript and affidavit attached to the reply, and reviewed the parties' arguments "multiple times." Based upon its lengthy and thorough analysis, the trial court denied the appellant's Request for New Trial.

{¶15} The appellant filed a timely appeal, and sets forth the following three assignments of error:

{¶16} "I. THE STATE VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY KNOWINGLY MISCHARACTERIZING AN AMBIGUOUS JAIL MESSAGE AS A CONFESSION WHILE PREVENTING THE DEFENSE FROM PRESENTING ITS TRUE CONTEXT."

{¶17} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S CRIM.R. 33(A)(2) MOTION WITHOUT A HEARING DESPITE A COLORABLE, RECORD-BASED CLAIM OF PROSECUTORIAL MISCONDUCT AFFECTING THE FAIRNESS OF THE TRIAL."

{¶18} "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY PRECLUDING THE DEFENSE FROM CROSS-EXAMINING THE STATE'S WITNESS REGARDING THE CONTEXT OF A JAIL MESSAGE INTRODUCED BY THE STATE."

## ASSIGNMENT OF ERROR NO. I

{¶19} The appellant argues in assignment of error number one that the appellee knowingly mischaracterized the jailhouse messages such that it violated his due process rights, framing the appellee's actions as prosecutorial misconduct. We disagree.

### Standard Of Review

{¶20} The appellant submits in first assignment of error that "[i]n evaluating due process claims arising from prosecutorial conduct, courts examine the fairness of the proceedings as a whole, not the culpability of the prosecutor." Prosecutorial misconduct was discussed by this Court in *State v. Lee*, 2024-Ohio-2044 (5ᵗʰ Dist.):

> The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

> In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.

> Allegations of prosecutorial misconduct implicate due process concerns, and the touchstone of the analysis is the " 'fairness of the trial, not the

culpability of the prosecutor.' " *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review *de novo. State v. Razey*, 5th Dist. Delaware No. 23CAC030021, 2023-Ohio-4190, ¶ 28, citing *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009).

*Id.* at ¶¶46-50.

*Analysis*

**{¶21}** The appellant was charged with one count of attempted rape and one count of gross sexual imposition allegedly committed against his then 12-year-old niece. Telephone conversations and text messages between the appellant and his wife C.M. while the appellant was in jail awaiting trial were monitored and recorded by law enforcement officials. Detective Shawger testified regarding said jailhouse communications. Two of the messages provided the basis from which the appellee argued that an inference of guilt could be made. The appellant did not object to the statements when submitted during Shawger's testimony, nor did he object to them during the appellee's closing argument. Thus, he has waived all but plain error.

**{¶22}** The Ohio Supreme Court recently discussed the doctrine of plain error in *State v. Bailey,* 2022-Ohio-4407:

> Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in *Rogers.*) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *Rogers* at ¶ 22; *see* also *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52.

The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial").

*Id.* at ¶8-9. Thus, to overcome plain error, the appellant must satisfy all three prongs. He has, however, failed to do so herein. The evidence presented during trial included not only the jailhouse statements, but also the testimony of the victim's father and mother, the victim, the SANE nurse who interviewed and examined the victim, and Detective Shawger. It also included messages the appellant sent to B.V. As conceded by the appellant, this case hinged on circumstantial evidence and witness credibility. There was ample evidence presented in this case via the testimony of the witnesses, especially the victim. The jury clearly found the testimony compelling, believing the victim's characterization of events and her account of sexual abuse at the hands of the appellant. The appellant has failed to establish that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.

{¶23} Additionally, even if the appellant had objected, we still find no error. The appellant had the opportunity to cross-examine Detective Shawger regarding the statements, and could have called witnesses to support the argument that an inference could also be made that the statements referred to the appellant's infidelity rather than the alleged sexual assault of his niece. The trial court did not conclusively rule that evidence of the alleged infidelity was not admissible; rather, it specifically stated more than once that it did not find that the evidence was relevant "at this time." The trial court stated that the nature of the appellant's

line of questioning during cross-examination of Detective Shawger regarding the appellant's alleged infidelity elicited a hearsay response, but also suggested that it would revisit the ruling if it subsequently became relevant.

{¶24} Furthermore, the appellee did not elicit an improper inference. The trial court instructed the jury on inferences and evidence, stating:

> To infer, or to make an inference, is to reach a reasonable conclusion of fact which you may, but are not required to, make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you.
>
> Direct evidence and circumstantial evidence are of equal weight.
>
> You may not make one inference from another inference, but you may draw more than one inference from the same facts and circumstances.
>
> The evidence does not include the indictment, opening statements, or closing arguments of counsel. The opening statement and closing arguments of counsel are designed to assist you. They are not evidence.

{¶25} Inferences were discussed by the court in *State v. Knott*, 2025-Ohio-5745 (4th Dist.):

> "Inferences are ' "conclusion[s] which, by means of data founded upon common experience, natural reason draws from facts which are proven." ' " *In re A.R.*, 2025-Ohio-1160 (1st Dist.) ¶ 28, quoting *State v. Armstrong*, 2016-Ohio-7841, ¶ 22 (11th Dist.), quoting *State v. Nevius*, 147 Ohio St. 263, 274, 71 N.E.2d 258 (1947). "An inference 'may be drawn from the facts and conditions established.' " *Id.*, quoting *Armstrong* at ¶ 22. ***

*Id.* at ¶ 94. The jury, who the trial court instructed on the issue of inferences, heard the statements made by the appellant during the jailhouse communications with his wife, and could make an inference therefrom based upon their common experience. Doing so does not rise to reversible error.

{¶26} Finally, it is axiomatic that comments made by counsel during opening statements and closing arguments are not evidence. *State v. Asp*, 2023-Ohio-290, ¶59 (5th Dist.). As such, comments made by the appellee during closing arguments regarding the jailhouse communications, even if they had been objected to, do not rise to reversible error. The appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. II

{¶27} The appellant argues in his second assignment of error that the trial court erred in denying his motion for a new trial without a hearing. We disagree.

### *Standard Of Review*

{¶28} " 'Appellate review of a trial court's ruling on a motion for leave to file a motion for a new trial is conducted under an abuse-of-discretion standard.' *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 29, 205 N.E.3d 513. An abuse of discretion is more than a mere error of law; 'it implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable.' *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983)." *State v. Woods*, 2026-Ohio-2352, ¶ 8 (5th Dist.).

### *Analysis*

{¶29} Motions for a new trial in criminal cases are governed by Crim.R. 33, which provides in pertinent part:

**(A)** **Grounds**. A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) That the verdict is contrary to law;

(5) Error of law occurring at the trial;

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**(B)** **Motion for new trial; form, time.** Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

\*        \*        \*

**(C) Affidavits required.** The causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit.

The appellant submits that he is entitled to a new trial based upon Crim.R. 33(A)(2), coupled with an assertion that additional evidence relevant to the alleged prosecutorial misconduct could be developed during a hearing.

{¶30} The appellant failed to attach an affidavit to his request for a new trial as required by Crim.R. 33(C). As set forth by this Court in *State v. Jefferson*, 2019-Ohio-156 (5th Dist.):

> Jefferson filed his motion pursuant to Crim.R. 33(A)(2). He alleged prosecutorial misconduct, juror misconduct, and misconduct of a witness. A motion for a new trial filed pursuant to Crim.R. 33(A)(2) must be supported by affidavit pursuant to Crim.R. 33(C). "If the defendant fails to produce

supporting affidavits, the trial court, in its discretion, may deny the motion summarily without a hearing." *State v. Rogers*, 68 Ohio App.3d 4, 7, 587 N.E.2d 381 (9th Dist.1990), citing *Toledo v. Stuart*, 11 Ohio App.3d 292, 293, 11 Ohio B. 557, 465 N.E.2d 474 (6th Dist.1983). Here, Jefferson failed to submit affidavits in support of his motion for a new trial and thus failed to comply with Crim.R. 33(C). Further, upon review of the motion, we cannot say that the trial court abused its discretion in denying the motion for a new trial.

*Id.* at ¶ 88. The appellant failed to attach an affidavit to his request for new trial as mandated by Crim.R. 33(C). Furthermore, an affidavit attached to a reply brief in support of a request for new trial does not satisfy the Crim.R. 33(C) mandate. The trial court did not abuse its discretion when it denied the appellant's motion for new trial without an oral hearing.

{¶31} Despite the appellant's failure to attach an affidavit to his motion for new trial, the trial court nevertheless engaged in a thorough analysis of the issues presented – listening to several hours of jailhouse communications between the appellant and his wife, reading relevant portions of the trial transcript, and reviewing the arguments of counsel "multiple times." The trial court did not act unreasonably, arbitrarily, or unconscionably when it denied the appellant's motion for new trial, and as such did not abuse its discretion. The appellant's second assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR NO. III

{¶32} The appellant argues in his third assignment of error that the trial court committed plain error by precluding him from cross-examining the appellee's witness regarding the context of the jailhouse communications between the appellant and his wife. We disagree.

*Standard of Review*

{¶33} As set forth above, to establish plain error the appellant must show that an error occurred, that the error was obvious, and that the error affected the outcome of the trial.

*Analysis*

{¶34} The appellant argues that he was precluded from cross-examining the appellee's witness regarding the context of the pertinent jailhouse communications, and that this error rises to the level of plain error. It does not. The argument mischaracterizes what transpired during trial, as the appellant was not conclusively precluded from cross-examining the witness regarding the jailhouse communications. While the trial court did state that at that time it considered testimony regarding the alleged infidelity to be hearsay, it specifically stated that it was making said determination "at this time," suggesting that it would reconsider the issue if the information later became relevant. Thus, the trial court determined, at the time the issue arose, that the testimony sought via the appellant's cross-examination of Detective Shawger elicited hearsay, but left the possibility open for further ruling on the issue. In addition, as set forth above, ample evidence was presented to the jury through the testimony of the witnesses, especially that of the victim, as well as printouts of the appellant's messages to B.V., which the jury found compelling and supported its guilty verdict on both charges. The appellant's third assignment of error is without merit and is overruled.

## CONCLUSION

{¶35} Based upon the foregoing, the appellant's assignments of error numbers one, two, and three are without merit and are therefore overruled. The decision of the Muskingum County Court of Common Pleas is hereby affirmed.

{¶36} Costs to appellant.

By: Baldwin, J.

King, P.J. and

Gormley, J. concur.